Now we're up for the next case of the morning, similar issue, number 21-50406, United States v. Castillo. We'll hear from Ms. Davidson. Good morning, and may it please the Court. Kristen Davidson on behalf of Mr. Castillo, who's a United States citizen who is traveling to Guatemala. The Mexican authorities wanted him to unhook his RV from his car to pass both vehicles separately. So in no man's land, he did a U-turn, and that's how he ended up back at the port of entry of this country. Customs engaged in their typical review of papers. They searched the vehicle, and they found an old revolver, some ammo, and a little bit of pot. A criminal investigator from HSI was called in to engage in a criminal investigation. He was searching for evidence of whether or not Mr. Castillo was part of a larger smuggling venture. For several hours, he searched, but he found no evidence to indicate that Mr. Castillo was part of a bigger smuggling venture. During this time, Mr. Castillo was detained separately from his travel mates. He was handcuffed, and he was ultimately subjected to custodial interrogation in violation of his Fifth Amendment Miranda rights. That's the point at which the investigator, still searching for evidence, demanded his You say demanded. At some stage, the request was made for the password or some way to get into the phone. Is that correct? And Mr. Castillo gives it? Correct. No, you say demanded. Explain that to me. What happened when the password, how was the password demanded or requested? I think he walked in, the phone was locked, and said, give me your passcode. Whether or not it was a Fifth Amendment violation was also handled in the motion to suppress. The district court did find that in fact Mr. Castillo was subject to custodial interrogation in violation of the Fifth Amendment. That request itself was custodial interrogation? Correct, and that's not an appeal issue. But it does become a fact in law finding of the district court. At the point at which the investigator began his search of the cell phone, he had established no evidence that made him believe that Mr. Castillo was part of a bigger smuggling operation. And at the point at which he began searching the phone, he had no evidence that the phone itself contained contraband. You know, the facts here are pretty simple, and they're similar to those that have been replicated in two or three other cases, like Molina Isidoro, and I forget what that other one was, but your argument is a legal argument, is it not? It is. Okay, why don't you move on to that? I will, Your Honor. The question really is whether or not the search of the cell phone is constitutional. The agent claimed the border search exception allowed him to search for evidence of a crime on that phone. He had found no evidence of a crime up until that point, and so he kept searching. So the answer to whether or not that search is constitutional is really framed in two ways. One, does the border search exception actually apply? For an exception to the Fourth Amendment to be reasonable, the search has to be tethered to the purpose of the justifications that support that exception. The strongest historical justification for a border exception search is to search for smuggled contraband. And when a search is intrusive, the case law has required some particularized suspicion that contraband is actually on the phone. The investigating agent didn't have that when he began his search of the phone. He was simply looking for criminal evidence. In general law enforcement activities, the general search for evidence of a crime is So the border exception, even though it happened literally at the border, doesn't apply to the facts of this case. Do you have any circuits that take that view, that in this border setting it would apply particularized suspicion? Yes, it's a two-part answer, Your Honor. Whether or not the purpose of a border search exception includes general searching for evidence has been expressly addressed by both the Ninth and the Fourth Circuit. In the Ninth Circuit, Canto rejected the government's argument that searches for evidence under the border search exception included general criminal investigation. In the Fourth Circuit, the Colesuse case, which both parties cite, teaches us that the border search exception cannot be invoked on behalf of generalized interest in law enforcement. That's page 143. Now, unfortunately, neither case, neither party seems to have shepherdized Colesuse, because if we had, we would have found the Fourth Circuit's IBECON, A-I-G-B-E-K-A-E-N-943-F-3-7-13, which took that teaching of Colesuse and found that a seizure of electronics at an international border for the purpose of investigating crime was untethered from the purpose of a border search exception. So we do have two circuits that have engaged in that balancing of whether the purpose of the search is tethered to the justifications for the exception. Well, what about reasonable suspicion? Yes. So, if the border search exception applies, then we have a robust amount of information, to be perfectly honest, that when a search is intrusive, and we know from Reilly and his suspicion, is required, that contraband actually exists in that item. So what are you saying? That he had, that the Border Patrol had absolutely no right to look at the cell phone once they had discovered illegal drug and, I'm sorry, gun and ammunition? Yes. For several reasons. First, the gun and the ammo is not itself contraband. They're regulated items, but there are regulations that allow a person to take them out of the country. Whether those rules apply in this case is beyond the record, but it's not contraband in the same way several kilos of meth is going to be automatic contraband. Same with the personal use amount of marijuana? Yes. Technically, that's... I didn't say that. I said the gun and the ammo. Oh, then I've answered your question. Your Honor, I'll move on. So, that is different, factually, than the other cases this Court has addressed where they've discovered something that is... Well, whether there's reasonable suspicion or not, I mean, reasonable implies that there's different facts, and I thought the Border Patrol agent said here that quite often when they found guns, they were looking for drugs as well. They found none other than... I understand that, but they were... Quite often, the people who were taking guns across the border in these circumstances were part of smuggling conspiracies. We don't have those facts on this record yet. I thought the Border Patrol agent said that is often the case, and therefore, that could have given him reasonable suspicion. It's not a particularized, articulable fact. That's a hunch, to say that it is often the case or can be the case or I found this before. You know, in the current state of our American border, it's... I mean, maybe it was different four or five years ago, but anyway, doesn't seem a very good argument now, but I am in the wrong time frame. Well, Customs and ultimately HSI did their job. They identified whether or not he was legal to come in. He was. They searched his vehicles. That's well established by the border search exception. They've identified items that they wanted to investigate further. He had a right to investigate further. That's not my argument, but when it comes to a phone, which is a highly intrusive search, which exposes to the government the privacies of life, when there's no particularized suspicion that contraband is actually contained within it, that's where the purpose of the search in this case, which was just to look for evidence of a crime, is untethered from the border search exception. Would you accept that the search of the phone would be permitted at some level based on these facts? Sure. Is the argument primarily that the law enforcement officer went too far, or could the phone not be searched at all? Phones are not immune from search. That's not the argument. Not immune, but immune in this case? Or are you accepting it was subject to some level of search? With a warrant. With a warrant. And again, there's... With a warrant, it's subject to all sorts of search. What I'm talking about is, what does the border exception allow in this case insofar as the phone itself is concerned? Nothing? If the border exception is applied, then there should have been particularized suspicion that the phone itself contained contraband. And without that particularized suspicion, it would not be permissible absent a warrant. But isn't it correct that border officers can do body cavity searches? Not without particularized suspicion, Your Honor. Even Montoya de Hernandez, which is a detention place, ultimately they got a magistrate's warrant in order to do that. Well, okay then, what about United States v. Towsett? The 11th Circuit holding the Fourth Amendment permits forensic searches of electronic devices at the border without suspicion. Oh, the 11th Circuit is not the Fifth, Your Honor. And I would actually refer the Court instead to Ramsey, which does talk about particularized suspicion of opening an envelope. Reasonable suspicion that the envelope actually contains contraband. That's well established by law, 19 U.S.C. 482. It's well established by Ramsey. And what I find ironic is that there's more Fourth Amendment protection to a single letter than there is to the entirety of a cell phone based on the justifications the government set forth for its border search. Time and time again, when a search is intrusive, and Riley and Carpenter have established that the generalized search through digital data is highly intrusive, some particularized suspicion that the item itself contains contraband is required in order for the border search exception to be reasonable in that particular moment. And that is not what the facts of this case are. There was no reasonable suspicion. There was no particularized suspicion that the phone itself contained contraband. Therefore, the agent should have gotten a warrant if he cared to explore further whether or not Mr. Castillo was part of a smuggling venture. That is well established by Supreme Court precedent examining the scope of the border search exception. What Judge Pryor says, the Supreme Court has never required reasonable suspicion for a search of property at the border, nor has it been, and he accepts Montoyas de Hernandez, nor has it been willing to distinguish between different types of property. Well, what the Supreme Court has established in Riley is that digital data is categorically distinct from a personal item like a suitcase or a purse or a wallet. So, while there has been...  Isn't that the point? In order for Riley to get to its ultimate holding, which was the search incident to arrest exception did not apply, it analyzed the intrusiveness of a government search of someone's cell phone and the privacies of life that it contains. That's independent from whatever exception is being applied. That is something categorically distinct from a wallet. You said it's independent, but didn't the Supreme Court itself acknowledge it may not be independent and they acknowledge other exceptions might create different rulings? They acknowledge case-by-case specific exceptions, particularly the exigent circumstances, so that would also be in the toolbox of an agent in a particular case, but exigent circumstances don't exist in this case. So, there are tools that customs agents have when investigating, but when it's a highly intrusive search, the Supreme Court has found reasonable those searches with at least particularized suspicion, and that's only if the exception were to apply in the first place. Thank you. All right. Thank you. Mr. Goldman. Good morning, Your Honors, and may it please the Court, Ross Goldman for the United States. There are, of course, two searches here, the initial manual search and the follow-on forensic searches. On the manual search, no court to our knowledge in Mr. Castillo has cited no judicial decision that has applied or required any level of individualized suspicion for a manual search of a phone at the border. And we think, in our view, that is perfectly consistent with the Supreme Court case law on the expansiveness of— And you have circuits on your side on that point. I'm sorry, Your Honor? No court's done that, and you have circuits. And there are multiple—exactly, there are multiple courts. You'd be creating a circuit split. You would certainly be creating a circuit split, that's right, and it would be, we think, in conflict with Supreme Court precedent, but at most, what any court is required for, even a forensic search at the border, would be reasonable suspicion. And in here, of course, Special Agent Henderson's initial manual search was amply supported by reasonable suspicion, the search having come after Mr. Castillo, claimed ownership of everything in the RV, said he had nothing to declare, and then agents found a gun, ammunition for that gun, and drugs. It's sort of separately hidden, packaged up, one in the oven, one in a pressure cooker, they're sort of separately hidden throughout, so that would amply provide, or those facts provided reasonable suspicion for the manual. Is suspicion of drugs to get into the phone on any sort of suspicion? Are the guns themselves enough? Judge Jones was talking with your friend on the other side about the officer's testimony that often the two go together, smuggling of guns as well as drugs. How important is the possibility of drugs to your argument as to the initial look at the phone? In our view, it's not important at all because the manual search was permissible even absent individualized suspicion. The drugs would be relevant if this court were to hold, and again, it would be the first court to hold, that reasonable suspicion was required for the manual search of the phone. Then the constellation of facts, the gun, drugs, ammunition separately hidden in the RV, after Mr. Castillo claimed ownership of everything in the RV, would have provided reasonable suspicion that there was evidence of, at the very least, a gun and drug smuggling activity would be on the phone. But again, we don't think the court needs to resolve that because the manual search can be suspicionless, but there is suspicion. Then, of course, the discovery of the— If we move on, what would the government's position be as to the right to search if Castillo had not given his password? That raises a more complicated question about what the order agents would have done, and I believe it's the case that agents would have had the authority to either deny admission entirely, or allow admission of Mr. Castillo, but seize the phone, and not allow the phone to be— There's no search issue at all in that circumstance. I'm sorry? There would be no search issue at all, or would the phone then be searched? In our view, the phone would still be subject to search, but if he didn't provide the passcode, there would have to be a forensic search. That would have had to take place, or at least the application of forensic software to break the passcode. I'm just trying to understand the basis of your argument for this first step. Maybe I can do it this way. The first step here, the manual search, just involved the agent looking at the phone as you or I would look at our phones. The issue of the passcode is no longer relevant to this appeal because the district court held that although the statement about the passcode was given without Mr. Castillo first having been Mirandized, that the statement was nevertheless voluntary. And that finding has not been disputed on appeal. So I think the issue of the passcode— I take Your Honor's point— I think the password is not an issue in this case because it's not been renewed on appeal, but I'm trying to get to the bottom of what the law is in this area and what the rights at the border are in the searching of phone. And if voluntary access to the phone is not granted, what are the rights of the government? So it seems to me this is step-by-step through it, even though the voluntary, whatever, providing of the password was heard here insofar as we need to address it. Why don't you move into the forensic examination? So the forensic examination followed the discovery of child pornography on the phone. And, you know, no court has required anything more than reasonable suspicion for a forensic examination of the phone at the border. Here, of course, the discovery of the child pornography on the phone pursuant to the manual search provided reasonable suspicion, provided probable cause for the forensic search of the phone. Now, as I understand it, Mr. Castillo's primary argument on it— well, there's two, really. One is that Riley changes everything and that Riley requires a warrant to search phones at the border. And again, no court has accepted that premise. Several courts have considered it. No court has accepted it, including this court in its unpublished decision in Escargega, which was a merits determination that a warrantless search of a phone was permissible. It also rejected the idea that Riley— or at least, at the very least, it didn't accept the idea that Riley changed things in both Molina Isidoro and Aguilar, which affirms denials of suppression motions on good faith grounds. And in other cases cited in our briefing,  which is that Riley, of course, held that officers generally need a warrant to search a phone incident to arrest. But that was because the context was such that the privacy implications of a phone are high. The Supreme Court made that clear. The court also made clear, though, that on the other side of the balance, the government-need side of the balance, the purposes animating the search incident to arrest doctrine, preservation of evidence and protection of officers' safety, were not really implicated when an officer has arrested a suspect and has taken possession of a phone. And so it's that balance of things— the decreased government need and then the privacy implications of a phone—that caused the court in Riley to hold that officers generally need a warrant to search a phone incident to arrest, though, of course, the court made clear that other exceptions to the warrant requirement might apply. The reason why Riley doesn't change things at the border is because although Riley—we don't dispute— Riley sort of elevates to some degree the privacy implications in a phone, at the border, the government's power— the government's interest in conducting the searches is, quote, at its zenith, as the Supreme Court made clear. And it's that difference in balancing— that's the reason why Riley does not require warrants at the border, and it is the reason why every court to our knowledge that have considered this question has rejected the idea that Riley requires warrants at the international border. I do want to address the contraband versus evidence distinction that— She also argued no reasonable suspicion, but I interrupted. Excuse me. Well, no. Before you moved on, and it sounded like Judge Jones had something, too, we're talking about a cell phone here. What if this had been a laptop computer? If this had been some other—and that probably is not correct—some other piece of equipment that's more difficult to access? How far does your argument go as everything can be searched that someone's trying to bring into this country? So, thank you, Your Honor. Our position is, and we think this is fully consistent with the Supreme Court precedent, that officers can search electronic devices without individualized suspicion, be it phones, laptops, flash drives, it doesn't matter. But I will say in this case, and I do want to be clear, the court doesn't have to accept that proposition in order to affirm the denial of the motion to express, either because the court could, I think, very easily hold that even the manual search here was supported by reasonable suspicion, or because the good faith exception to the exclusionary rule would apply. What would your argument be if no child pornography was found, but a forensic examination was still made? If child pornography were found during the manual search? If nothing was found during the manual search to create additional suspicion. Our position would be that the forensic search would still be permissible as an under-the-border search doctrine. But again, I recognize that courts have kind of gone different ways on what suspicion is required for a forensic search at the border. The 11th Circuit, as Judge Jones noted, has held that no suspicion is required, even for forensic searches at the border. The 4th Circuit, the 9th Circuit, have held that, at the very least, reasonable suspicion is required for a forensic search at the border. Again, the court doesn't need to resolve those questions because there was reasonable suspicion. Indeed, there was probable cause both for the manual search and for the forensic search. And so the only way in our view that the district court would have come out that the merits would come out against the United States here would be if this court would require a warrant for a manual or a forensic search at the international border. And no court has done that. Every court to have considered it has rejected that, and it would be inconsistent with Supreme Court precedent, I think, to do that. The issue of evidence versus contraband is a distinction that the 9th Circuit drew in the Canot decision. Other courts have rejected that distinction. In this case, it's not even clear that it would matter. In our view, let me just back up and say, in the government's view, and the government filed the cert petition out of Canot, which the court denied, but the government's position is that the evidence versus contraband distinction has no place at the border. Indeed, it has no place generally in Fourth Amendment law in particular, but certainly at the border, and that's because the whole purpose of the border search authority is in recognition of the sovereign's ability and authority to protect the territorial integrity of its borders, and that purpose is further equally by preventing contraband, for example, child pornography or drugs, from coming to the country as it would be from finding evidence on a phone, for example, that once someone comes in the country, they're about to commit a crime of a terrorist attack or a crime of sexual violence or, you know, whatever the case may be. But even, again, another question that the court doesn't really need to resolve, because here, even if this court were to adopt Canot, the searches would be permissible. Is the government still enforcing this law at the border today? Enforcing which law? Against importation of pornography? I believe so, yes. I would assume so. Yes. Not rigorously. I believe that we are still enforcing these laws to the best of our ability. At least there's nothing that would make me question that standing here today. But on the Canot point, again, and we note this in our brief, the search here would be permissible even under the distinction that Canot drew, because Canot, in Canot the Ninth Circuit, you know, said that the officers there could have searched call logs, contact lists, and the like, because contraband, digital contraband, could be hidden there. And Canot, of course, said that the manuals, a manual search of that type can be conducted without any individualized suspicion. The Ninth Circuit found a problem, a constitutional problem with the agent there not searching the material, but writing it down or taking a picture of what the agent saw. To the extent, again, the government doesn't think that's a correct distinction in the law, but it's also something that Special Agent Henderson testified he did not do here. And so, you know, that kind of distinction, even if it had grounding in the law, wouldn't counsel in favor of overturning the District Court's decision here. And then the final point I'll just make is, on good faith, in all material respects, this court has no further questions. Thank you.  Riley. Thank you, Mr. Cedaro and Aguilar, which both involved warrantless searches of phones at the border. Both were post-Riley, and in both cases this court held that a reasonable officer could have believed, based on the state of the law at the time of the search, that the search was constitutional, and we would submit that no different result is warranted here. If the court has no further questions, we would ask the court to affirm. Okay. Thank you, sir. Judge Stathwick, I'd like to begin with your original round of questions to opposing counsel. In the District Court's order, this is reference site 154 to 55 and 158, the court made very clear that giving the passcode in violation of Miranda was not consent to search the phone. So there... What? I didn't quite hear you. I'm sorry? You said what? I didn't quite hear the last part of your statement. The court held what? Oh, that giving the passcode in violation of his Fifth Amendment right was not consent to search the phone. Consent. Consent. Okay. Sorry. Excuse me. As to good faith, there's no binding precedent on this court that has held that anything goes at the border, especially when the search is so intrusive. That is not the law, and there's not binding precedent on that point. Well, the problem is there were two previous searches of cell phones at the border that uncovered contraband, and both of them were held shielded by the good faith exception, and both of those searches occurred within approximately 12 months of when this one occurred. I understand that, Your Honor. I think they're factually distinct. That's part of my argument. It is not the case that a big cache of drugs were found in a... found... But this is also not like a generic search of every phone at the border. There were indicia here. I'm just wondering if your argument overstates this case. No. When we look at good faith, we look at what's binding at the time, and I don't think that good faith has ever required the court to find in one case. This is Fourth Amendment jurisprudence, of which both Riley and Carpenter are part of, and which the border search exception is a part of. We know from Riley and Carpenter that the search of digital data on someone's cell phone is highly intrusive. That exists no matter the location of the search. We also know from the border search jurisprudence that when a search is highly intrusive, there needs to be some particularized suspicion that the item being searched actually contains contraband. That's consistent with the Supreme Court's precedent and this Court's precedent when it comes to non-routine searches. There has to be some sort of particularized suspicion of contraband. That's my only point, though. I thought you were saying at the outset that there can't be no protection of phones at the border. My point was just simply that I think that this case doesn't present that issue. There were reasons why this particular person was searched. It's not a generic search of everybody at the border. This is with guns. I understand your question. Sorry, Your Honor. Yes. Mr. Castillo was under investigation. Whether it's good enough, we can debate, but this is not a categorical all-person search. Correct. He was under investigation, but at least two circuits have found expressly that the purpose of the border search exception is not for identification of crime. That also is deeply rooted in the— It's very interesting because they used to pick up—they used to go through luggage looking for drugs, no matter who you were. I think they still do, Your Honor, but a piece of luggage is categorically different than a cell phone. Even the sister phone, the sister case in Riley, which was just a flip phone, not a smart phone, was given those additional privacy interests. And so what we have is a highly intrusive search. The justification for the border search exception has to be tethered to its purpose. When it's a highly intrusive search, the courts have required particularized suspicion that contrabands on that item. It is not the same as a wallet or a purse. And so we ask that this court to reverse and vacate Mr. Castillo's convictions. Thank you. Okay. Thank you very much.